**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Republic Services Procurement Incorporated,<br><br>             Plaintiff,<br><br>vs.<br><br>PeopleReady Incorporated,<br><br>             Defendant. | No. CV-19-00299-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).[1] (Doc. 21)

**I.**    **Background**

This action arises from a National Temporary Service Agreement (the "Agreement") entered into by Republic Services Procurement Incorporated ("Plaintiff") and PeopleReady Incorporated ("Defendant"). (Doc. 1-2 at 3) On January 27, 2017, the parties signed the Agreement, under which Defendant agreed to provide temporary laborers at certain facilities owned and operated by Plaintiff and its affiliates. (Doc. 1-2 at 3)

Pursuant to the Agreement, Defendant sent Darius Mitchell to work at one of Plaintiff's facilities. (Doc. 1-2 at 5) On May 7, 2018, Mr. Mitchell fell from a moving truck, causing severe injuries. (Doc. 1-2 at 5) The truck was owned and operated by Plaintiff's

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

affiliate. (Doc. 1-2 at 5) On June 12, 2018, Mr. Mitchell filed a complaint against Plaintiff in Massachusetts state court, alleging two negligence claims against Plaintiff (the "Mitchell Case"). (Docs. 1-2 at 5; 22-1 at 30-32) Mr. Mitchell also filed a workers' compensation claims against Defendant, and Defendant paid the claim in full. (Doc. 22 at 12)

On July 19, 2018, Plaintiff presented the Mitchell Case to Defendant and requested that Defendant defend and indemnify Plaintiff. (Doc. 1-2 at 5) Defendant refused. (Doc. 1-2 at 5) On December 21, 2018, pursuant to the Agreement's choice-of-law clause, Plaintiff filed this case in the Maricopa County Superior Court. (Docs. 1-2 at 2; 21-1 at 20) Defendant petitioned to remove the case to this Court on January 17, 2019. (Doc. 1)

In the Complaint, Plaintiff alleges that Defendant breached its duty to defend, duty to indemnify, and duty to procure insurance. (Doc. 1-2 at 6) In addition, Plaintiff requests declaratory relief in the form of a judicial determination that Defendant has a contractual duty to provide a defense and full indemnity in the Mitchell Case. (Doc. 1-2 at 7) In the Answer, Defendant denies liability and lists forty-one affirmative defenses. (Doc. 10) In addition, Defendant asserts two counterclaims. First, Defendant asserts that Plaintiff's negligence alone caused Mr. Mitchell's injuries, and it is therefore entitled to recover the workers' compensation payment via subrogation. (Doc. 10 at 15) Second, Defendant argues that Plaintiff breached its covenant of good faith and fair dealing by violating safety laws on the date of Mr. Mitchell's injuries. (Doc. 10 at 16)

On July 15, 2019, Plaintiff filed this Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c). (Doc. 21) Defendant responded on July 29, 2019, and Plaintiff replied on August 5, 2019. (Docs. 22, 23) The Motion is fully briefed and ready for ruling.

**II.   Legal Standard**

A district court reviews a Rule 12(c) motion under the same legal standard as Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Therefore, all the factual allegations in the complaint—and any counterclaims asserted by the defendant—are taken as true. *See Id.* However, a court is not required to accept as true any legal conclusions that are not supported by factual allegations. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). The motion will be granted only if a court finds that no issue of fact exists, and that the movant is entitled to judgment as a matter of law. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

Generally, a court may not consider documents outside the pleadings when ruling on a Rule 12(c) motion. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, a court may consider a document if it is central to a claim asserted in the pleadings. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In addition, a document is not considered "outside" the pleadings if the complaint specifically refers to the document and its authenticity is not questioned. *Id.*

## III. Discussion[2]

Plaintiff argues that there are no disputed facts in this case, and the Court's decision must turn on contract interpretation. (Doc. 21 at 2) The Court agrees.

Under Arizona contract law, when a contract is clear and unambiguous, then a court must give effect to the contract as it is written. *Grubb & Ellis Mgmt. Serv., Inc. v. 407417 B.C., L.L.C.*, 138 P.3d 1210, 1213 (Ariz. Ct. App. 2006). This fundamental principle of contract law ensures that parties are free make contracts as they desire, and the courts will not unjustifiably interfere in that process. *See Mining Inv. Grp., LLC v. Roberts*, 177 P.3d 1207, 1211 (Ariz. Ct. App. 2008). A court will not find an ambiguity in a contract merely because the parties disagree on its meaning. *Shanks v. Davey Tree Surgery Co.*, 845 P.2d 483, 486 (Ariz. Ct. App. 1992).

### A. Plaintiff's Claims: Breach of the Duties to Defend and Indemnify

Plaintiff maintains that the plain language of Section 14.1 in the Agreement establishes a duty upon Defendant to defend and indemnify Plaintiff in the Mitchell Case,

---

[2] In support of their arguments, the parties attached several documents to the Motion and Response. (Docs. 21-1, 22-1, 22-2, 22-3) The Court finds that the documents are central to Plaintiff's claims and Defendant's counterclaim. Therefore, the Court will analyze the Motion under Rule 12(c). *See Knievel*, 393 F.3d at 1076.

3

and that Defendant breached both duties. (Doc. 21 at 5, 8) In response, Defendant asserts several arguments as to why Section 14.1 is inapplicable in this case and Plaintiff is not entitled to the relief it seeks. (Doc. 22)

The duty to defend and the duty to indemnify are distinct. *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 982 (Ariz. Ct. App. 1986). "The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable." *Id.* Once a complaint alleges facts which may fall within the parties' indemnity provision, and the indemnitee tenders the claim to the indemnitor, the duty to defend attaches. *See Nucor Corp. v. Emp'rs Ins. Co.*, 296 P.3d 74, 86 (Ariz. Ct. App. 2012). In contrast, "[t]he duty to indemnify depends on whether the indemnitee engaged in actual, active wrongdoing." *INA Ins. Co.*, 722 P.2d at 982.

Here, Section 14.1 of the Agreement states:

> <u>Indemnification by [Defendant]</u>. [Defendant] agrees to defend, hold harmless and unconditionally indemnify [Plaintiff] from and against all Losses that [Plaintiff] may at any time suffer or sustain or become liable for in any manner caused by, resulting or arising from or related to: (a) [Defendant's] breach of this Agreement, (b) negligent or intentional actions or failures to act by [Defendant] or its Personnel or agents, (c) the work performed by [Defendant], its Personnel or agents in relation to this Agreement, or (d) Losses asserted against [Plaintiff] by or on behalf of any [Defendant] Personnel or any of their family members, heirs or assigns ("[Defendant] Personnel Losses"), where such [Defendant] Personnel Losses are caused in whole or in part by any actions of any third party or of any [Defendant] Personnel; provided, however, that [Defendant] shall have no obligation to defend, hold harmless, and indemnify for any Losses that are caused by: solely [] the negligent actions or failures to act; the gross negligence or intentional misconduct as determined by a court of competent jurisdiction or as reasonably agreed to between the parties; a breach of this

4

Agreement or applicable law; or strict liability of or by [Plaintiff] unless such Losses relate to a claim against [Plaintiff] that if made against [Defendant] would have been covered by workers' compensation insurance, even if the claimant alleges that the Losses are caused by the negligent actions or failures to act or strict liability of [Plaintiff]. [Defendant's] obligations under this Agreement shall survive the expiration, termination or non-renewal of this Agreement.

(Doc. 21-1 at 18)

We address each of Defendant's arguments below.

### 1. The Work Ticket

Defendant argues that the terms of Section 14.1 were modified by a work ticket signed by an authorized representative of Plaintiff on the date of Mr. Mitchell's accident. (Doc. 22 at 7) Defendant asserts that, per the terms of the work ticket, it had no duty to defend or indemnify Plaintiff. (Doc. 22 at 7-9) The express terms of Section 16.3 allowed for a modification of the contractual terms only when "done in writing and signed by an authorized representative of each party." (Doc. 21-1 at 20) Citing *Barrett v. Duzan*, 559 P.2d 693, 695-96 (Ariz. Ct. App. 1976), Defendant argues that "the terms of the [] Agreement cannot limit the parties' ability to modify the contract in the future, even where it purports to do so." (Doc. 22 at 8) Defendant's argument is misplaced. In *Barrett*, the Arizona Court of Appeals explained that a contractual modification would be upheld when the parties enter into a subsequent agreement with new terms and new consideration. *See id*. Here, Defendant does not assert that the different terms under the work ticket were accompanied by new consideration. Even assuming the work ticket was signed by an authorized representative, it is clear that only one signature is on the work ticket. (Doc. 22-3 at 5) Therefore, the work ticket could not constitute a modification of terms, and Section 14.1 governs the Defendant's duties of defense and indemnity under the contract.

### 2. Workers' Compensation Exception

Next, Defendant argues that the workers' compensation exception at the end of

Section 14.1 only applies to situations in which Defendant's workers' compensation insurance proceeds are available to the employee, but the employee has not made a workers' compensation claim, and instead, has filed a lawsuit against Plaintiff. (Doc. 22 at 11-12) Defendant argues that the provision is not applicable because Mr. Mitchell did make a workers' compensation claim against Defendant and Defendant paid the claim. (Doc. 22 at 11-12) Defendant further argues that interpreting the contract otherwise would render the rest of Section 14.1 meaningless. (Doc. 22 at 13-14)

Contrary to Defendant's argument, the Court finds that the language of the Agreement is clear and unambiguous. The Agreement states that Defendant has the duty to defend and indemnify Plaintiff for losses that "relate to a claim against [Plaintiff] that if made against [Defendant] would have been covered by workers' compensation insurance, even if the claimant alleges that the Losses are caused by the negligent actions or failures to act or strict liability of [Plaintiff]." (Doc. 21-1 at 18) If the parties intended to make the duties to defend and indemnify dependent on whether the injured employee had received workers' compensation benefits, then the parties were free to include such language in the Agreement.

Additionally, Defendant's assertion that Plaintiff's interpretation of the workers' compensation exception would render the rest of Section 14.1 meaningless is also unavailing. Defendant argues that Plaintiff's interpretation would require Defendant to defend and indemnify Plaintiff anytime an employee sent by Defendant was injured on the job. (Doc. 22 at 13) Plaintiff gives at least one example as to why this argument fails: if a worker was injured due to Plaintiff's sole negligence while acting outside the scope of his or her employment, then Section 14.1 would not apply because workers' compensation benefits would not be available to that employee. (Doc. 21 at 9) Therefore, the plain language of Section 14.1 controls, and the Court finds that the workers' compensation exception is applicable to the Mitchell Case.

3. Material Breach of the Agreement

Finally, Defendant asserts that Plaintiff materially breached the contract first by

violating multiple safety laws on the date of Mr. Mitchell's accident,[3] and therefore, the material breach excuses Defendant from any further duty to perform under the contract. (Doc. 22 at 13) Defendant cites to Section 5.7 of the Agreement, which states "[b]oth [Defendant] and [Plaintiff] warrant that it shall ensure that it and all Personnel comply with all Applicable Laws pursuant to this Agreement." (Doc. 22-1 at 9)

"A material breach occurs when a party fails to do something required, which is so important to the contract that it defeats the very purpose of the contract." *Mill Alley Partners v. Wallace*, 341 P.3d 462, 465 (Ariz. Ct. App. 2014). Normally, whether a breach is material is a question of fact. *See Found. Dev. Corp. v. Loehmann's, Inc.*, 788 P.2d 1189, 1197-98 (Ariz. 1990) (describing factors to be considered by a trier of fact in determining the materiality of a contractual breach). However, when it is clear that a reasonable jury could not return a verdict in the defendant's favor, the question need not be submitted to a jury. *See Long v. Int'l Paper Co.*, No. 88-6721, 1990 WL 56832, at *2 (9th Cir. Apr. 30, 1990).

The Court finds that any citation issued to Plaintiff, on its own, could not constitute a material breach of the Agreement. First, the fundamental purpose of the Agreement encompassed Defendant providing temporary laborers to perform various tasks at Plaintiff's facilities. Although any negligence on the part of Plaintiff may have made the working environment more dangerous, any such negligence did not prevent the parties from fulfilling the essence of the contract.

Additionally, although the parties agreed to follow applicable laws under Section 5.7, the Agreement defined "Losses" as "any civil or criminal fine, excise tax, penalty or assessment levied by any local, state or federal governmental entity, of any nature whatsoever." (Doc. 21-1 at 4) Section 14.1 specifically covers any "Losses as defined in the agreement." Including losses arising from civil or criminal penalties shows that the parties intended for Plaintiff to be covered under the Agreement even if Plaintiff received

---

[3] The United States Department of Labor Occupational Safety and Health Administration issued a citation to Plaintiff due to Mr. Mitchell's accident. (Doc. 22-1)

the citation, and so, it could not constitute a material breach of the contract. Therefore, Defendant is not excused from its duty to perform under the Agreement.

B. Defendant's Counterclaim: Good Faith and Fair Dealing[4]

Plaintiff argues that Defendant's counterclaim should be dismissed because it directly contradicts the express language in the Agreement. (Doc. 21 at 14) In response, Defendant argues that Plaintiff breached the covenant of good faith and fair dealing by knowingly violating several safety laws and standards which created an unsafe environment for Mr. Mitchell. (Doc. 22 at 17-18) Defendant further argues that Plaintiff may be held liable for breaching the implied covenant even when the Agreement addresses the subject matter. (Doc. 22 at 17-18)

In Arizona, the covenant of good faith and fair dealing is implied in every contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). "[T]he initial inquiry consists of an objective finding, i.e., whether the [party] acted unreasonably, [and] the second inquiry focuses on the [party's] conduct and whether the [party] knew that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it." *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992). Although a contract may expressly address issues affecting a party's alleged violation of the implied covenant, the parties' written agreement does not automatically prevail over the implied covenant. *See Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 436 (Ariz. Ct. App. 2002). In that way, a party can breach the covenant of good faith and fair dealing even if the contract speaks to the same or a related subject matter. *Id.* However, just because a party breaches an express covenant in an agreement, the party does not automatically breach the covenant of good faith and fair dealing. *See Rawlings v. Apodaca*, 726 P.2d 565, 573 (Ariz. 1986).

Here, Defendant alleges in the counterclaim that Plaintiff knowingly violated safety

---

[4] Defendant also asserted a counterclaim for subrogation. (Doc. 10 at 15) Defendant agreed to waive the subrogation counterclaim, so the Court will not address the issue. (Doc. 22 at 18)

8

laws and standards, which directly resulted in Mr. Mitchell's injuries. (Doc. 10 at 16-17) Because Plaintiff has not shown that Defendant's claim fails as a matter of law, the Court will not grant Plaintiff's requested relief. The Court will, however, limit Defendant's potential recoverable damages to the amount of Mr. Mitchell's workers' compensation claim. In addition to the amount paid under the claim, Defendant attempts to recover damages "to the extent that [Plaintiff] is demanding that [Defendant] defend and indemnify [Plaintiff] against the Mitchell Action even though the Mitchell Action and the Mitchell Injury were caused by the breaches of [Plaintiff], its affiliates, and its employees." (Doc. 10 at 17) As discussed extensively above, Defendant is under a contractual duty to defend and indemnify Plaintiff pursuant to Section 14.1 of the Agreement. Defendant cannot sidestep those duties by asserting a claim for breaching the covenant of good faith and fair dealing.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Judgment on the Pleadings (Doc. 21) is **granted in part and denied in part**. The parties shall move forward with discovery solely with respect to Plaintiff's claim related to Defendant's failure to procure insurance; the determination of damages as to all of Plaintiff's claims; and Defendant's Counterclaim II.

Dated this 17th day of January, 2020.

Honorable Steven P. Logan
United States District Judge